**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES NOVAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-4012 |
| ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. ) | |
| and AMERICAN ELECTRIC POWER SERVICE ) | |
| CORPORATION ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant American Electric Power Service Corporation's ("AEP") motion to dismiss Counts I and IV of Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). [7] For the reasons stated below, AEP's motion to dismiss [7] is granted, but the dismissal is without prejudice.

**I.     Background**[1]

In 2007, Plaintiff James Novak ("Plaintiff") became aware that his credit file prepared and maintained by Defendant Experian ("Experian") – a consumer reporting agency – and the file of another consumer, "James Smith," had been "mixed." Plaintiff spoke with an Experian agent by phone and informed the agent that Plaintiff's and James Smith's files had been conflated. The agent informed Plaintiff that Experian would correct the error and issue a new

---

[1] For purposes of AEP's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

credit report in 30-45 days. Experian then sent Plaintiff an updated credit report in which the information pertaining to James Smith's file had been deleted. However, in 2009, Experian once again mixed Plaintiff's and James Smith's files. A fraud alert was then placed on Plaintiff's credit file.

Plaintiff alleges that Experian permitted Defendant AEP – a utility company – to access Plaintiff's credit information three times on October 20, 2009.[2] Plaintiff alleges that on October 21, 2009, an AEP agent telephoned Plaintiff to tell him that AEP had accessed Plaintiff's information and received the fraud alert associated with his credit report. Plaintiff later contacted AEP to request a copy of the application and records for the account for which AEP requested the report. This AEP account belonged to James Smith. On December 21, 2009, AEP informed Plaintiff that it would not provide the requested information because AEP did not have an account associated with Plaintiff's social security number and indeed did not provide utility service in Illinois. On December 27, 2009, Plaintiff contacted AEP with a renewed request for the documentation regarding James Smith's AEP account. On January 14, 2010, upon receipt of Plaintiff's second request and of notice from Experian of the fraud alert and a discrepancy of address (presumably between Plaintiff's and James Smith's addresses) in the credit report, AEP accessed Plaintiff's credit report for a fourth time. AEP then sent Plaintiff a letter stating that it found no evidence of fraudulent activity and that James Smith had not obtained or attempted to obtain credit based on Plaintiff's information. Plaintiff's attorney made a third request that AEP provide the Plaintiff with James Smith's account information, and AEP again refused to do so.

---

[2] In its motion, AEP contends – and Plaintiff does not dispute – that AEP does not do business in Illinois, that James Smith is an AEP customer, and that Plaintiff (a resident of Illinois) is not an AEP customer.

On June 29, 2010, Plaintiff filed a complaint against Experian and AEP alleging various violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Only Counts I and IV of the complaint pertain to AEP. In Count I, Plaintiff alleges that AEP violated § 1681b of the FCRA because AEP did not have a permissible purpose for accessing Plaintiff's credit report and AEP knew or should have known that the information it accessed from Experian did not pertain to James Smith. Plaintiff alleges that, as a result of the violation, AEP is liable to Plaintiff for actual and punitive damages under §§ 1681n and 1681o of the FCRA. In Count IV, Plaintiff alleges that AEP violated § 1681g(e) by failing to provide Plaintiff with a copy of James Smith's AEP account information despite Plaintiff's repeated requests. Plaintiff seeks a permanent injunction requiring AEP to comply with § 1681g. AEP filed a motion to dismiss Counts I and IV under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [7]

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14). In other words, the pleading must allege facts that plausibly suggest the claim asserted. *Twombly*, 550 U.S. at 570. "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (omission in original).

The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III. Analysis**

Congress designed the FCRA to safeguard the privacy of consumer's credit information that is maintained by consumer reporting agencies. See 15 U.S.C. § 1681(a)(4); see also *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004). Accordingly, the FCRA provides that consumer reporting agencies may release customer information for only specifically enumerated "permissible purposes." 15 U.S.C. § 1681b(a), (c). The FCRA makes it punishable for non-consumer reporting agencies to use or obtain a consumer report for impermissible purposes. 15 U.S.C. § 1681b(f). A person who allegedly used or accessed the report for impermissible purposes may be liable for actual damages if they did so negligently, 15 U.S.C. § 1681o, or for punitive damages if they did so willfully, 15 U.S.C. § 1961n.

  **A. Count I**

Plaintiff alleges in Count I of his complaint that AEP violated § 1681b of the FCRA by accessing Plaintiff's credit information from Experian for an impermissible purpose. Plaintiff alleges that AEP knew or should have known that the information did not belong to AEP's account-holder, James Smith (with whom Plaintiff's credit information was conflated in

4

Experian's files) because it received a fraud alert and discrepancy of address notification from Experian.

AEP contends in support of its motion to dismiss that it cannot be held liable under § 1681b of the FCRA for several reasons. First, AEP submits that § 1681b(c) applies only to consumer reporting agencies. 15 U.S.C. § 1681b(c). AEP is not a consumer reporting agency as defined in the statute. See 15 U.S.C. § 1681a(f).[3] Indeed, Plaintiff's complaint identifies AEP as a utility company, and nowhere alleges that AEP meets the definition of a consumer reporting agency. The Court agrees that § 1681b(c) does not apply to AEP because AEP is not a consumer reporting agency.

Second, AEP argues that it cannot be held liable under § 1681b(f) because the information concerning Plaintiff that AEP allegedly accessed was not a "consumer report" under the statutory definition. Section 1681b(f) provides in pertinent part that "[a] person shall not use or obtain a *consumer report* for any purpose unless * * * the consumer report is *obtained for a purpose for which the consumer report is authorized* to be furnished * * *."[4] 15 U.S.C. § 1681b(f) (emphasis added). Section 1681a(d) defines a "consumer report" as:

---

[3] Section 1681a(f) defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

[4] Permissible purposes of a consumer report are enumerated in section 1681b(c)(1) of the FCRA, which provides that "[a] consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) of this section in connection with any credit or insurance transaction that is not initiated by the consumer only if" the consumer authorizes release of the report or the transaction consists of a firm offer of credit. 15 U.S.C. § 1681b(c)(1)(A)-(B). Section 1681b(a)(3) provides in pertinent part that a consumer reporting agency may only furnish a consumer report "to a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the

> [A]ny written, oral, or other communication of any *information* by a consumer reporting agency *bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part *for the purpose of* serving as a factor in *establishing the consumer's eligibility for* (A) *credit or insurance* to be used primarily for personal, family, or household purposes; (B) *employment purposes*; or (C) *any other purpose authorized* under section 1681b * * *.

15 U.S.C. 1681a(d)(1)(A)-(C) (emphasis added). In other words, the FCRA defines a "consumer report" as much by its function as its substance. See *Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 (7th Cir. 1988) (holding that the FCRA does not "regulate *all* information on consumers[;] [i]t regulates information that is 'used or expected to be used or collected' for one of the 'consumer purposes' set forth in the definition of a 'consumer report'" (citing 15 U.S..C. § 1681a(d)(1)) (emphasis added)). Thus, in the Seventh Circuit, consumer information constitutes a "consumer report" under the FCRA only if:

> (1) the person who requests the report actually uses the report for one of the 'consumer purposes' set forth in the FCRA; (2) the consumer reporting agency which prepares the report 'expects' the report to be used for one of the 'consumer purposes' set forth in the FCRA; or (3) the consumer reporting agency which prepared the report originally collected the information contained in the report expecting it to be used for one of the 'consumer purposes' set forth in the FCRA.

*Id.* at 449. A report containing consumer information that is used not for "consumer purposes," but rather for "business, commercial, or professional purposes," is not a "consumer report" under the FCRA. See *McCready v. Ebay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006) (citing *Ippolito*, 864 F.2d at 452).

AEP relies on *Ippolito* in support of its argument that it is not liable under §1681b(f) because it merely used the report for "business, commercial, or professional purposes" rather

---

extension of credit to, or review or collection of an account of, the consumer" or (C) "intends to use the information in connection with the underwriting of insurance involving the consumer * * *." 15 U.S.C. § 1681b(a)(3)(A), (C).

6

than for consumer purposes. [9, at 3] In *Ippolito*, the plaintiffs and defendant had been engaged in a trademark dispute. See *Ippolito*, 864 F.2d at 444. In anticipation of litigation over the dispute, the defendant obtained a copy of the plaintiffs' credit report to evaluate the plaintiffs as potential litigant-opponents. *Id.* at 444-45. In the FCRA suit that followed, the court acknowledged that the defendant had used the plaintiffs' credit report for a non-consumer purpose, but held that the credit report would not be considered a "consumer report" under the FCRA (and thus could not render defendant liable) unless the consumer reporting agency had originally collected the information for consumer purposes and expected it to be used for such purposes. *Id.* at 452-53. The court held that the trial record was "devoid of basic information concerning why [the credit reporting agency] collected the information," and that "[t]he fact that the reports *may* be consumer reports because [the credit reporting agency] originally collected the information for consumer purposes * * * is simply an insufficient basis upon which to impose liability against [defendant]." *Id.* at 453.

Here, Plaintiff alleges that AEP accessed Plaintiff's credit information from Experian on four occasions: three times in October 2009 and once in January 2010. The first three occasions apparently were prompted by AEP's efforts to access the information of James Smith, the AEP customer with whom Experian had "chronically mixed" Plaintiff's credit file. [1, at ¶ 9] Accepting all allegations as true, Plaintiff's complaint supports at most an inference that AEP's access of Plaintiff's information on October 20 was the inadvertent result of Experian's mistake; the allegations do not support the conclusion that AEP "used" or "obtained" Plaintiff's "consumer report." See *Phillips v. Grendahl*, 312 F.3d 357 (8th Cir. 2002) (holding that "[m]ere passive receipt of the report would not be enough to satisfy the statutory element that [defendant] 'use or obtain' a consumer report"), abrogated on other grounds by *Dafeco Ins. of America v.*

7

*Burr*, 551 U.S. 47 (2007). Plaintiff's complaint thus fails to state a claim against AEP under § 1681b(f) with respect to the three October 2009 incidents.

Plaintiff alleges that the fourth occasion on which AEP accessed Plaintiff's information from Experian stemmed from Plaintiff's repeated requests for James Smith's AEP account information and from AEP's receipt of a notice of fraud alert and notice of address discrepancy from Experian. Plaintiff claims that AEP sought Plaintiff's credit report for the purpose of "investigating" the alleged fraud. Plaintiff thus has raised a colorable claim that AEP sought to access his information for an impermissible purpose on January 14, 2010.

Nevertheless, the Court concludes that Count I of Plaintiff's complaint against AEP nevertheless is subject to dismissal because it does not sufficiently plead that Plaintiff has suffered damages as a result of AEP's use of Plaintiff's credit report. A plaintiff may recover "any actual damages he sustains as a result of a negligent violation" of the FCRA. 15 U.S.C. § 1681o. A plaintiff also may recover punitive damages if the defendant willfully violated the statute. 15 U.S.C. § 1681n. The plaintiff bears the burden of establishing that he is entitled to damages. See *Ruffin-Thompkins v. Experian Info. Solutions*, 422 F.3d 603, 608 (7th Cir. 2005). Of course, at the motion to dismiss stage, the plaintiff need only allege facts sufficient to plausibly suggest that he is entitled to damages.

Here, however, as currently pled, Plaintiff's complaint fails to satisfy that minimal requirement. Plaintiff has not provided even the slenderest of allegations to buttress the conclusion that he suffered actual damages in support of a theory of negligent violation under § 1681o(a)(1). He has not, for example, alleged that he was denied or lost credit or was subjected to a higher interest rate as a result of AEP's improper use of his credit report. See *Young v. Harbor Mortor Works, Inc.*, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) (dismissing FCRA

claim in which plaintiff alleged that he suffered a decrease in his credit score as a result of defendant's unauthorized request for his credit report but did not allege that he "was denied credit, lost credit, had his credit limits lowered, * * * was required to pay a higher interest rate for credit * * * [or suffered] any non-pecuniary damage such as loss of reputation or physical or mental effects" (internal citations omitted)); *Renninger v. ChexSystems*, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998) (dismissing FCRA claim on the ground that "a consumer is not injured by an inaccurate credit report unless that false information is communicated to and *acted upon* by a third-party user) (emphasis added)). Plaintiff merely makes the threadbare allegation that he "was damaged by these violations." [9, at ¶ 32.] The Court therefore dismisses Count I against AEP without prejudice.[5] See *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 2007) (holding that a court may dismiss a claim *sua sponte* under Rule 12(b)(6) "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading").

**B.  Count IV**

In Count IV, Plaintiff alleges that AEP violated §1681g(e) of the FCRA when it failed to provide Plaintiff with "a copy of application and business transaction records in the control of the business entity, whether maintained by the business entity or by another person on behalf of the business entity * * *" upon Plaintiff's request. AEP argues that § 1681g(e) of the FCRA does not apply to it, and that Count IV of Plaintiff's complaint therefore should be dismissed.

Section 1681g(e) provides that:

> For the purpose of documenting fraudulent transactions resulting from identity theft, not later than 30 days after the date of receipt of a request from a victim * * * and subject to verification of the identity of the victim and the claim of identity theft * * *, a business entity that has provided credit to, provided for consideration

---

[5] And because Plaintiff has failed to plausibly allege that he suffered actual damages, his claim for punitive damages also must fail. See *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 2007).

> products, goods, or services to, accepted payment from, or otherwise entered into a commercial transaction for consideration with, a person who has allegedly made unauthorized use of the means of identification of the victim, shall provide a copy of application and business transaction records in the control of the business entity, whether maintained by the business entity or by another person on behalf of the business entity, evidencing any transaction alleged to be a result of identity theft to * * * the victim."

15 U.S.C. § 1681g(e). The same provision defines a "victim" as "a consumer whose means of identification or financial information has been used or transferred (or has been alleged to have been used or transferred) without the authority of that consumer, with the intent to commit, or to aid or abet, an identity theft or a similar crime." 15 U.S.C. 1681g(e)(11).

Plaintiff has not made even a facial allegation that his credit information was used or transferred with the intent to commit or to aid or abet an identity theft or similar crime. As Plaintiff admits, he "does not know if the mixed file is the result of true identify theft, or corporate errors by, for example, Experian." [21, at 2.] Plaintiff has not alleged that James Smith used Plaintiff's credit information incorrectly, that AEP entered into a transaction with Smith on the basis of Smith's improper use of Plaintiff's information, or that Plaintiff in any other way is the victim of "true identity theft."[6] As such, Plaintiff's complaint does not plausibly suggest that he was entitled to receive James Smith's AEP account records as a victim of identity theft and thus does not state a claim under § 1681g(e). The Court therefore dismisses Count IV for failure to state a claim.[7]

---

[6] Because Plaintiff's complaint makes no allegations in regard to the "police report" referenced in Plaintiff's response brief [see 21, at 4 & n.1], and the police report itself is not attached either to the complaint or the brief, the Court is unable to evaluate whether any allegations based on that report would enable Plaintiff to state a claim. If Plaintiff wishes to file an amended complaint, he is of course free to reference or use the police report as appropriate.

[7] AEP contends that even if Plaintiff had sufficiently alleged that he was entitled to request James Smith's records, AEP had discretion to reject the request. Section 1681g(e)(5) provides that a business entity has discretion to decline to provide the requested information to an alleged victim of identity theft

Dismissal of Count IV also is warranted on alternative grounds. Plaintiff seeks a permanent injunction requiring AEP to release James Smith's AEP account records under §1681g. The FCRA does not entitle Plaintiff to injunctive relief. See *Williams v. Credit Protection Ass'n Trans Union, LLC*, 2009 WL 3614500, at *5 (N.D. Tex. Nov. 2, 2009) (citing *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 268 (5th Cir. 2000); *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)). The statutory provisions creating a private right of action to enforce the FCRA allow plaintiffs to seek actual or statutory damages, punitive damages, costs, and attorney's fees, but do not provide for any form of injunctive, declaratory, or other equitable relief. See *Washington*, 199 F.3d at 268; *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 338-40 (N.D. Ill. 2002). Moreover, a different provision of the statute, § 1681s(a), expressly provides that compliance with the FCRA shall be enforced by the FTC through cease and desist orders. See *In re Trans Union Corp.*, 211 F R.D. at 339. Thus, as the Fifth Circuit summarized, "[t]he affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." *Washington*, 199 F.3d at 268.

The two cases on which Plaintiff relies for the contrary proposition do not aid his cause. In *Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir. 2001), plaintiff did not seek injunctive relief but merely requested fees and costs as well as monetary damages under FCRA. And although the Supreme Court held in *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979), that a

---

if it determines in good faith that the statute does not require disclosure or that the request was based on a misrepresentation of fact. 15 U.S.C. § 1681g(e)(5)(A), (C). Although in theory this argument may advance a motion for summary judgment, it is not grounds for dismissal of Count IV, as it would depend upon facts whose level of detail far exceeds that required to state a claim in notice pleading.

11

federal court has equitable power to issue injunctions absent clear Congressional command, such command exists here: the FCRA sets forth a detailed remedial scheme that permits private parties to seek actual and punitive damages, but not injunctive relief (see 15 U.S.C. §§ 1681n, 1681o) and vests an exclusive right to seek injunctive relief in the FTC (*id*. § 1681s(a)). The Court therefore dismisses Count IV of Plaintiff's complaint.

**V.     Conclusion**

For the foregoing reasons, the Court grants AEP's motion to dismiss [7] Count I (as it pertains to AEP) and Count IV of Plaintiff's complaint, and dismisses those counts without prejudice.

Dated: February 25, 2011            _____
                                    Robert M. Dow, Jr.
                                    United States District Judge